**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **PATRICIA ELLEN BOWEN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:12-cv-0022** |
| **v.** | ) | |
| | ) | **Judge Nixon** |
| **CAROLYN W. COLVIN,** | ) | **Magistrate Judge Knowles** |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Plaintiff Patricia Ellen Bowen's Motion for Judgment on the

Administrative Record ("Motion") (Doc. No. 9), filed with a Brief in Support (Doc. No. 10).

Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition.

(Doc. No. 11.) Magistrate Judge Knowles issued a Report and Recommendation ("Report"),

recommending that Plaintiff's Motion be denied and the decision of the Commissioner be

affirmed. (Doc. No. 12 at 1.) Plaintiff then filed Objections to Magistrate's Report and

Recommendation ("Objection"). (Doc. No. 13.) For the reasons stated below, the Court

**ADOPTS** the Report in its entirety, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of

the Commissioner.

## I.    BACKGROUND

### A.  Procedural Background

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 21, 2009,

asserting disabilities dating back to May 10, 2005. The disabilities alleged included venous

stasis; depression; "overweight"; prolonged swelling and resulting pain in in legs, feet, and

ankles; and underactive thyroid. (Tr. 13.) The Social Security Administration ("SSA") denied

Plaintiff's claim on April 20, 2009 (Tr. 49), and again upon reconsideration on June 12, 2009

(Tr. 50). Plaintiff subsequently requested (Tr. 59) and received (Tr. 96) a hearing, which was

conducted on July 15, 2010, before Administrative Law Judge ("ALJ") Frank Letchworth (Tr

29). At the hearing, Plaintiff was represented by a non-attorney advocate, Roy Boyd, and

alleged further disabilities in addition to those on her DIB application, specifically, "severe

arthritis both knees and patellofemoral arthrosis, high blood pressure, chronic kidney disease

secondary to high blood pressure, major depressive disorder, general anxiety disorder, morbid

obesity, and GERD".[1] (Tr. 32.) Plaintiff and vocational expert ("VE"), Katharine Bradford

testified at the hearing. (*Id*.) ALJ Letchworth denied Plaintiff's claim on August 26, 2010. (Tr.

29.) ALJ Letchworth made the following findings of fact and conclusions of law:

> 1. The claimant last met the insured status requirements of the
> Social Security Act on December 31, 2007.
>
> 2. Through December 31, 2007, the claimant engaged in
> substantial gainful activity during 2005 (20 CFR
> 404.1520(b) and 404.1571 *et seq*.).
>
> 3. However, there has been a continuous 12-month period(s)
> during which the claimant did not engage in substantial
> gainful activity. The remaining findings address the
> period(s) the claimant did not engage in substantial gainful
> activity up until her date last insured, December 31, 2007.
>
> 4. Through the date last insured, the claimant had the following
> severe impairments: Chronic Venous Insufficiency; Morbid
> Obesity (20 CFR 404.1520(c)).
>
> 5. Through the date last insured, the claimant did not have an
> impairment or combination of impairments that met or

---

[1] As discussed more fully below, Plaintiff alleges, that she also suffered from "severe lymphedema" prior to her last insured date, but was not properly diagnosed with this ailment until 2009. (Doc. Nos. 10 at 18; 13 at 5-7.) She also asserts that this retroactive diagnosis was improperly discounted by the ALJ. (Doc. No. 13 at 5-7.)

medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

The State Agency psychologist found there was insufficient evidence to establish any severe mental impairment under 20 CFR 404.1521. In activities of daily living, the claimant had no restriction. In social functioning, the claimant had no difficulties. With regard to concentration, persistence or pace, the claimant had no difficulties. As for episodes of decompensation, the claimant had no episodes of decompensation, each of extended duration. Because the claimant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied. The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

6. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

7. Through the date last insured, the claimant was capable of performing past relevant work as a retail clerk. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 10, 2005, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1529(f)).

(Tr. 14–21.)

Plaintiff filed a request for review of the hearing decision on October 26, 2010. (Tr. 8.)

On January 27, 2012, the Appeals Council declined to review the case (Tr. 1–3.), thereby

rendering the decision of the ALJ the final decision of the Commissioner.

Plaintiff filed this action on March 3, 2012, to obtain judicial review of the

Commissioner's final decision under 42 U.S.C. §§ 405(g) 1383(c) (2010). (Doc. No. 1.)

Pursuant to Magistrate Judge Knowles's order of May 28, 2012 (Doc. No. 6), Plaintiff filed a

Motion for Judgment on the Record with supporting Brief on July 29, 2012 (Doc. Nos. 9; 10).

Defendant filed a Response on August 28, 2012. (Doc. No. 11.) Magistrate Judge Knowles

issued his Report recommending that Plaintiff's Motion be denied on June 10, 2013. (Doc. No.

12.)

On June 24, 2013, Plaintiff filed an Objection to the Report. (Doc. No. 13.) Specifically,

Plaintiff asserts that Magistrate Judge Knowles failed to properly scrutinize the ALJ's decisions

to (1) reject the opinion of Plaintiff's treating physician; (2) find that Plaintiff was not credible

concerning the extent of her pain and physical limitations, and non-compliant with her prescribed

treatment regimen; and (3) find that Plaintiff could, through the date last insured, perform a full

range of light work as defined in 20 CFR § 404.1567(b). (*Id.*)

The Court now reviews Magistrate Judge Knowles's Report, considering Plaintiff's

Objection.

### B. *Factual Background*

#### 1. Medical History

Plaintiff was born on May 29, 1954. (Tr. 292.) She has been treated by Denise Dingle,

M.D., her primary care physician, since March 2000. (Tr. 18–19.)

In 2000, Dr. Dingle reported that Plaintiff suffered from gastroesophageal reflux

disease ("GERD"), lesions in her legs due to either obesity with venous stasis or cellulitis,

morbid obesity, and dysfunctional uterine bleeding ("DUB"). (Tr. 261.) Over the next seven

years, Plaintiff continued to see Dr. Dingle intermittently, seeking treatment primarily for

obesity and persistent swelling in her legs, ankles, and feet. (Doc. No. 10 at 2--5.) She also complained of depression and anxiety, and occasionally reported symptoms of pain and arthritis in her knees and possible osteoarthritis in her right hip. (*Id.*)

At the July 15, 2010, hearing before ALJ Letchworth, Plaintiff testified that she has been suffering from and receiving treatment for "severe arthritis both knees and patellofemoral arthrosis, high blood pressure, chronic kidney disease secondary to high blood pressure, major depressive disorder, general anxiety disorder, morbid obesity, and GERD" as well as a "long history of bilateral knee and leg pain." (Tr. 32.) She claims that these ailments amounted to disability prior to her last insured date of December 31, 2007, and that most were diagnosed prior to that date. (*Id.*)

Plaintiff's primary complaints prior to her last insured date, thus, were lower leg swelling and pain, obesity, and anxiety and depression. Plaintiff cites these ailments as the causes of her inability to work. (Doc. No. 10 at 11--12.)[2] Accordingly, the Court outlines in more detail Plaintiff's history with these particular conditions.

a. Lower Limb Swelling and Pain

Dr. Dingle began treating Plaintiff for leg swilling (edema) and lower extremity lesions in 2000, with a possible diagnosis of venous stasis. (Tr. 258.) Dr. Dingle prescribed Aldactone to control the edema, which Plaintiff continued to use through 2002.[3] (Tr. 256.) Plaintiff's legs showed improvement by December 2000, when they had decreased in size, and no longer had pitting edema, a condition where the application of pressure to the skin results in a persistent

---

[2] Plaintiff also mentions "chronic kidney disease brought on by high blood pressure, which sometimes causes incontinence" (Doc. No. 10 at 14) but does not specify any evidence or medical record supporting this statement, and does not further discuss the presence of chronic kidney disease or its effect on her ability to work.

[3] Aldactone is noted as a medication in Plaintiff's January 9, 2002, record, but is not thereafter listed. (Tr. 249).

indentation. (Tr. 254). In October, 2001, Plaintiff reported that she was "doing well." (Tr. 250.)

During a January 9, 2002, exam, Plaintiff complained of right hip pain and Dr. Dingle prescribed Celebrex. (Tr. 249–50.) In February 2002, Plaintiff reported that the Celebrex was not adequately controlling her hip pain, and Dr. Dingle prescribed Vioxx. (Tr. 248–249.)

Plaintiff's lower limbs are not further addressed in her medical records until July 26, 2005, when she complained of swollen feet. (Tr. 239.) There was no pitting edema at that point. (*Id.*)

On July 11, 2006, Dr. Dingle reported that Plaintiff's legs had improved in that they were softer than usual and normal color rather than purple. (Tr. 234.)

On May 1, 2007, Dr. Dingle again noted the presence of venous stasis swelling, (Tr. 232), which was again diagnosed noted in August and November of 2007. (Tr. 230–31.) On November 13, 2007, Dr. Dingle referred Plaintiff to A. Brian Wilcox, Jr., M.D., for consultation due to lower extremity pain and edema. (Tr. 230.) Dr. Wilcox diagnosed Plaintiff with venous insufficiency, and found that "obesity and edema" prevented feeling a pulse in her feet, though they were warm. (Tr. 327.) Dr. Wilcox also noted an "appearance of significant longstanding edematous subcutaneous changes, with a somewhat woody consistency to the tissue…Range of motion of her knee and ankle joints limited due to her body size, edema, and obesity." (*Id.*) Dr. Wilcox prescribed "elevation" and "ambulation as able" as well as compression garment utilization. (*Id.*) He also offered to refer Plaintiff to a surgeon. (*Id.*) Plaintiff declined to use the compression devices because of "discomfort." (*Id.*) According to the administrative record, this was the last medical consultation Plaintiff sought prior to her last insured date.

Subsequent to her last insured date, Plaintiff continued treatment for venous stasis and arthritis. (Tr. 220–29.) On November 17, 2009, Plaintiff had a consultation with Catherine Dale, M.D., who diagnosed her with lymphedema. (Tr. 284.) Although Plaintiff was previously diagnosed with venous stasis based on the same symptoms as the lymphedema, Dr. Dale noted that the treatment is the same for both disorders: continuous use of compression devices. (*Id.*) Dr. Dale reported that Plaintiff would experience "symptomatic improvement with constant use of the hose" and that there "are no successful medical or surgical treatments for this condition." (*Id.*)

### b. Obesity

Dr. Dingle initially diagnosed Plaintiff with morbid obesity on April 6, 2000. (Tr. 258.) On February 5, 2002, Dr. Dingle prescribed Meridia, an appetite suppressant. On February 22, 2002, Dr. Dingle increased the dosage of Meridia dosage 15 mg, and discussed a "diet plan" with Plaintiff. (Tr. 247, 249.) The Meridia prescription was renewed on February 26, 2003, January 1, 2006, and March 28, 2007. (Tr. 245, 23.) On June 26, 2007, Plaintiff expressed concern about the Meridia's effectiveness, and Dr. Dingle substituted Adipex. (Tr. 232.)

Other than the above prescriptions for appetite suppressants and initial diagnosis of morbid obesity, Plaintiff's weight was not discussed as a disabling condition in her medical records prior to the last insured date. On a form dated September 15, 2009, nearly two years after the last covered date, Dr. Dingle reported that Plaintiff's obesity caused "significant disfunction [(sic)] of her back and legs which limit her ability to lift and carry", and also noted that the condition "did occur before Nov[.] 2007." (Tr. 267.) ALJ Letchworth determined, however, "[i]t is unclear *when* the claimants ability to lift became limited and *what the limits were on a particular date*." (Tr. 19.) Furthermore, Dr. Dingle's previous treatment notes

contain no reference to Plaintiff's obesity, or its disabling effects, other than noting the appetite suppressant prescriptions and diet plan.

### c. Depression and Anxiety

On September 29, 2004, Dr. Dingle diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and agoraphobia, but noted that her affect was "bright" overall and she had no "tearfulness". (Tr. 244.) Dr. Dingle prescribed Plaintiff Xanax and Lexapro. (*Id.*) At her next appointment on February 1, 2005, Plaintiff reported she felt "great." (*Id.*) On July 26, 2005, Plaintiff reported the Lexapro was "helping lots." (Tr. 239.) On September 20, 2005, Dr. Dingle added Wellbutrin to Plaintiff's regimen after Plaintiff claimed that she was still depressed, though feeling better than the previous year. (Tr. 238.) Dr. Dingle increased Plaintiff's Wellbutrin dosage on October 4, 2005. (*Id.*) On November 1, 2005, Dr. Dingle noted Plaintiff was suffering from insomnia, generalized anxiety disorder, and major depressive disorder. (Tr. 235.) Plaintiff's prescriptions for Lexapro, Wellbutrin, and Xanax were continued through at least March 28, 2007. (Tr. 235, 233.) On July 25, 2007, Plaintiff denied having symptoms of major depressive disorder. (Tr. 231.)

ALJ Letchworth found "no mention of depressive symptoms at her appointments on October 26, 2006, June 26, 2007, or August 24, 2007," and at her last appointment before the date last insured—November 13, 2007—Dr. Dingle noted that Plaintiff was described as "cheerful." (Tr. 18.) Plaintiff's record contains no consultations or request for consultation with any psychiatric or psychological professional.

2. <u>Employment History</u>

At the July 15, 2010, hearing, Plaintiff testified before ALJ Letchworth regarding her past work and education experience. (Tr. 33–36.) At the same hearing, VE Bradford testified regarding the physical and mental demands of Plaintiff's past work, and transferability of her existing skills to other jobs. (Tr. 45–46.)

Plaintiff received a high school diploma (Tr. 16), and worked from June 1986 to April 1991 as a substitute mail carrier (Tr. 126) and from April 1993 to May 2005 as the owner and operator of a retail pool business (*Id*). Plaintiff asserts that she worked sixty hours per week while involved in her pool business. (Tr. 127.) She states she had to lift fifty pounds on occasion, and twenty-five pounds frequently. (*Id.*) She also had to walk for two hours, stand for four hours, sit for two hours, and write, type, or handle small objects for two hours per day. (*Id.*) VE Bradford testified that the physical and mental demands of Plaintiff's past work correlated with a Dictionary of Occupational Titles (DOT) position of "retail manager", which amounts to a Specific Vocational Preparation (SVP) score of 7, entailing "light and skilled" labor. (Tr. 46.) VE Bradford further testified that Plaintiff's skills would be transferrable to the light, semi-skilled occupation of sales clerk, with no transferability to sedentary work. (*Id.*)

Plaintiff testified at the hearing that she sold her retail pool business in 2005 because she was "having a lot of issues with [her] legs, with the venous stasis" which "causes my legs, feet and ankles to swell, which in turn causes pain." (Tr. 36.) She stated that the prescribed treatment for her venous stasis was to wear Jobst compression stockings, which were useful in alleviating her symptoms, but that she did not wear them regularly because "they cut off your circulation and when it's hot and humid like it is now here locally you feel like you've got wool leggings on." (*Id.*) Plaintiff also stated that she suffers from chronic kidney disease, which

sometimes causes incontinence and arthritis in her knees, and major depression and anxiety which causes her to lose concentration. (Tr. 43.) She stated that she can walk about fifteen minutes before experiencing pain in her knees, and can sit for less than two hours at a time. (Tr. 43–44.)

## II.   STANDARD OF REVIEW

The Court's review of the Magistrate's Report is *de novo*. 28 U.S.C. § 636(b) (2009). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2010). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999); *see also Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-

settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. ADMINISTRATIVE HEARING PROCEEDINGS AND ALJ LETCHWORTH'S DECISION

To be eligible for Social Security Disability Insurance Benefits, a claimant has the ultimate burden to establish he or she is entitled to benefits, by proving his or her

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A) (2012). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3.     If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4.     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her RFC (*e.g.*, what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5.     At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. §§ 404.1520(a), 416.920(a) (2012); *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

If, at step five, the ALJ finds that the claimant cannot perform past relevant work or does not have past relevant work, he or she must consider whether the claimant can perform other work, by considering characteristics such as the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Moon*, 923 F.2d at 1181; 20 C.F.R. § 404.1520(f)(1) (2012). The Commissioner must rebut the claimant's prima facie case by asserting proof of the claimant's individual RFC and vocational qualifications to perform specific jobs. *See Wright v Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003); *Moon*, 923 F.2d at 1181. Typically the Commissioner will use VE testimony asserting what types of jobs claimant could perform, based on the claimant's RFC, to rebut a claimant's prima facie case of disability. *See Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (January 1, 1983)).

Under 42 U.S.C. § 423(d)(5)(A):

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this

---

[4] The Listing of Impairments is found at 20 C.F.R. Part 404(P), App. 1 (2010).

section; there must be medical signs and findings, established by
medically acceptable clinical or laboratory diagnostic techniques,
which show the existence of a medical impairment that results
from anatomical, physiological, or psychological abnormalities
which could reasonably be expected to produce the pain.

(2004); *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990).

When considering a claimant's statements regarding symptoms, the ALJ follows a two-factor

test. First, the ALJ determines if there is objective medical evidence of a physical or mental

impairment. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal

citations omitted); *see also* 20 C.F.R. § 404.1529 (2011). If such evidence exists, the ALJ next

determines whether there is objective medical evidence to confirm the severity of the alleged

symptoms arising from the impairment, or whether the impairment is of such severity that it

could reasonably be expected to produce the alleged symptoms. *Walters*, 127 F.3d at 531; *see

also* 20 C.F.R. § 404.1529 (2011).

When, under the second factor, a claimant's statements about his or her symptoms are not

substantiated by objective medical evidence, the ALJ may assess the claimant's credibility to

determine validity of the statements. *Walters*, 127 F.3d at 531 (citing *Kirk v. Sec'y of Health &

Human Servs.*, 818 F2.d 461, 463 (6th Cir. 1987)). Further, although an ALJ may not ignore a

claimant's subjective complaints, an ALJ's finding regarding the credibility of a claimant's

testimony is entitled to great deference. *Blacha*, 927 F.2d at 230.

Here, ALJ Letchworth found under the five-step analysis that (1) Plaintiff had last met

the insured status requirements of the Social Security Act on December 31, 2007, and that she

had engaged in substantial gainful activity during at least part of the period prior to Plaintiff's

last insured date (Tr. 14); (2) There was a continuous 12-month period during which Plaintiff did

not engage in substantial activity prior to her date last insured (*id.*); (3) Through the date last

insured, the Plaintiff had the severe impairments of chronic venous insufficiency and morbid obesity (Tr. 15); (4) Through the date last insured, the claimant did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16); and (5) considering all symptoms and medical evidence presented, through the date last insured, Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (*id*).

## IV.    PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff raises three objections to Magistrate Judge Knowles's Report. (Doc. No. 13.) First, Plaintiff argues that ALJ Letchworth erroneously rejected Dr. Dingle's opinion that Plaintiff was disabled prior to her last insured date, and that Magistrate Knowles should have revisited this decision. (*Id.* at 1.) Second, Plaintiff argues that ALJ Letchworth improperly rejected Plaintiff's testimony as to her own condition. (*Id.* at 7.) Finally, Plaintiff argues that the evidence in record demonstrated she could not perform a full range of light work prior to the date last insured. (*Id.* at 8.) Plaintiff's Objection does not specify what statutory grounds it is invoking. As best as the Court can determine, since the Objection is nearly identical to Plaintiff's pending Motion, it appears she is continuing to argue that the Commissioner's decision should be reversed, or in the alternative, remanded, pursuant to 42 U.S.C. § 405(g). (*See* Doc. No. 10 at 23.) The court addresses each objection in turn.

### A.    *ALJ Letchworth's Rejection of Dr. Dingle's Retroactive Diagnosis of a Disabling Condition*

Plaintiff objects to Magistrate Knowles' Report with respect to ALJ Letchworth's assessment of the opinion of Dr. Dingle. Specifically, Plaintiff appears to argue that ALJ Letchworth erred in failing to adopt Dr. Dingle's September 15, 2009, Medical Source Statement

14

of Ability to do Work-Related Activities ("Medical Source Statement") (Tr. 267–68).  (Doc. No.

13 at 3.)  In the Medical Source Statement, Dr. Dingle described Plaintiff's current physical and

mental limitations and noted the limitations related back to the period prior to her last insured

date.  (Tr. 267–68.)  Specifically, Dr. Dingle stated that (1) Plaintiff's morbid obesity "did occur

before Nov 2007", and (2) that Plaintiff had "evidence of venous stasis with acute exacerbation

due to standing and walking all day at work," and that Dr. Dingle began treating Plaintiff for this

condition in 2000.  (Tr. 267.)

     Federal Regulations require the ALJ to evaluate every medical opinion in the record

before coming to a decision.  20 C.F.R. § 416.927(c) (2013).  The opinions of medical

professionals who have treated[5] the claimant are generally given substantial weight provided the

opinions are "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and . . . not inconsistent with the other substantial evidence in [the] case record".  *Id.*

§ 416.927(c)(2).  Medical opinions are regarded as more reliable when they are supported by

objective medical findings and are consistent with the record as a whole.  *Id.*§ 416.927(c)(3)-(4).

    The Sixth Circuit has made clear that "[p]rovided that they are based on sufficient

medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference.'"  *Howard v.*

*Comm'r of Soc. Sec.,* 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.3d

431, 435 (6th Cir. 1985)) (internal brackets omitted).  However, the ALJ is not bound by the

opinion of the treating physician, provided he articulates a justification for his assessment.

*Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  Where evidence that is contrary to a

---

[5] A "treating source" is defined in the relevant federal regulation as "[claimant's] own physician, psychologist, or other acceptable medical source who provides [claimant] or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]."  20 C.F.R. § 404.1502.

treating source's opinion demonstrates that a claimant was capable of returning to relevant labor during the alleged period of disability, such as evidence that the claimant continued to perform equivalent work or other activities, an ALJ may properly reject the medical source opinion. *See Malone v. Comm'r of Soc. Sec.*, 69 F.3d 537, at *3 (6th Cir. 1995) (evidence that plaintiff was able to walk one-half mile, prepare her own meals, and perform other regular chores undermined her claim that she was totally disabled and supported Secretary's decision to discredit treating physician's opinion).

The Court finds ALJ Letchworth provided sufficient justification for his rejection of Dr. Dingle's 2009 Medical Source Statement as it related to the period prior to Plaintiff's last insured date. ALJ Letchworth stated in his decision that, with respect to the Medical Source Statement, (1) Dr. Dingle's opinions were "vague, unreliable, and inconsistent with her treatment notes" because they did not pinpoint a time when Plaintiff's abilities became limited, and Plaintiff continued to work and function during the period at issue; and (2) Dr. Dingle's treatment notes, which often reported Plaintiff's condition as stable, contradicted the Doctor's retroactive assessment that Plaintiff's venous stasis and obesity plagued her to the point of disability. (Tr. 19.) Thus, the Court finds that ALJ Letchworth adequately considered the evidence of record, articulated a rationale based on evidence in the record for his rejection of Dr. Dingle's Medical Source Statement, and complied with the applicable regulations in reaching his decision.

B.     *ALJ Letchworth's Determination Regarding Plaintiff's Refusal to Comply with Prescribed Treatment*

Magistrate Judge Knowles found that ALJ Letchworth properly justified his decision to discredit some of Plaintiff's claims regarding the intensity, persistence, and limiting effects of her symptoms because (1) Plaintiff's self-reported list of daily activities was contradictory to

these claims; (2) Plaintiff declined to adopt the treatment protocol prescribed by her doctors to alleviate the symptoms; and (3) the medical opinions Plaintiff relied upon to support her disability claims were provided nearly two years after her date last insured, and did not, contrary to Plaintiff's arguments, suggest a disabling condition. (Doc. No. 12 at 15–22.) Plaintiff objects, arguing that her failure to follow treatment should not prevent her from qualifying for disability because the prescribed treatment only provides "symptom" relief, not an improvement in her "medical condition." (Doc. No. 13 at 8.) Plaintiff further argues that she *did* attempt to follow the treatment for a period, but with no success. (*Id.*)

The ALJ is responsible for determining a claimant's credibility, and assessing the claimant's statements regarding his or her medical condition. *Walters,* 127 F.3d at 531. The ALJ's findings are accorded significant deference because the ALJ reviews the claimant's demeanor and credibility directly. *Id.* The ALJ evaluates a claimant's subjective statements of disability by examining the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible, provided the assessment is supported by substantial evidence. *See, e.g., Walters,* 127 F.3d at 531; *Blacha*, 927 F.2d at 230; *Kirk,* 667 F.2d at 538.

In this case, ALJ Letchworth described at length the reasons he found Plaintiff not credible with respect to her statements about her alleged disability. ALJ Letchworth found an inconsistency in Plaintiff's testimony regarding the reasons she quit working. (Tr. 17.) ALJ

Letchworth also found Plaintiff's self-confessed participation in her typical daily activities undermined her argument that she was disabled, noting that Plaintiff reported a continued ability to walk for fifteen minutes or one third of a mile, pay attention for an hour at a time, and follow oral and written instructions. (Tr. 18)  ALJ Letchworth stated that "such activities are clearly not the activities of an individual with totally disabling physical and/or mental conditions".  (Tr. 17–18.)

ALJ Letchworth further observed that Plaintiff's refusal to comply with prescribed treatment undermined her claims of disability.  (Tr. 18.)  As previously discussed, Plaintiff refused to wear compression hose as directed by Dr. Wilcox, her vascular surgeon.  (Tr. 19.)  ALJ Letchworth opined that "if the claimant were as truly disabled as she claims, she would at least attempt to comply with this minimally demanding advice."  (Tr. 18.)  ALJ Letchworth also cited Plaintiff's multiple cancellations of appointments as evidence of the lack of a thoroughly disabling condition.  (*Id.*)

While Plaintiff argues that her refusal to wear compression hose should not preclude her from a disability determination because, although she "might obtain some symptomatic relief from the use of compression hose, the failure to use the hose is not medically necessary to prevent lymphedema".  (Doc. No. 13 at 6.)  However, the Court finds the requirement that claimants seeking disability benefits follow medical treatment protocol is not limited to treatments that are curative.  The relevant regulation, 20 C.F.R. § 404.1530(a)–(b), states:

> (a) In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

As such, the determinative consideration is whether Plaintiff's use of the compression hose would "restore" her "ability to work", *not* whether the hose would cure her condition. Relief of symptoms can restore a claimant's ability to work. While claimants are not required to undergo risky surgery in order to obtain disability benefits when there is cause to refuse surgery (*See Colwell v. Gardner*, 386 F.2d 56, 70 (6th Cir. 1967)), "the general rule is that an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability." *Johnson v. Sec'y of Health & Human Servs.,* 794 F.2d 1106, 1111 (6th Cir. 1986). In this case, the prescribed treatment was simple and non-intrusive, and recommended by several doctors. Indeed, Plaintiff concedes that "to accomplish symptomatic relief, compression hoses were prescribed and she was educated on the concept of progressively changing the hose to gain improvement in the swelling" (Doc. No. 13 at 4.) However, Plaintiff refused to wear the compression hose, and as ALJ Letchworth noted, "the failure to follow such simple advice is not the typical behavior of people with totally disabling conditions." (Tr. 17.)

The Court agrees with Magistrate Judge Knowles's determination that ALJ Letchworth's evaluation of Plaintiff's credibility was based on substantial evidence. The Court finds ALJ Letchworth articulated several valid reasons why Plaintiff's testimony diminished the reliability of her disability claims, most notably her daily activity levels and her failure to comply with recommended treatment of her condition.

C.   *ALJ Letchworth's Determination Regarding Plaintiff's Ability to Perform a Full Range of Light Work*

Plaintiff objects to ALJ Letchworth's assessment that, through the date last insured,

Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. §

404.1567(b).  As defined by the regulation, "[l]ight work involves lifting no more than 20

pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even

though the weight lifted may be very little, a job is in this category when it requires a good deal

of walking or standing, or when it involves sitting most of the time with some pushing or pulling

of arm or leg controls."  Plaintiff argues that "[e]ven if Ms. Bowen could lift twenty (20) pounds,

she could not walk or stand or use leg controls because of her lymphedema.  As stated *above*,

standing or walking for long periods of time is one of the very worst things that a person with

lymphedema can do."  (Doc. No. 13 at 9) (emphasis added).  Despite Plaintiff's reference to

apparently previously supplied information, Plaintiff fails to specify where the information

contained "above" states that to stand or walk is among the "worst thing[s] a person with

lymphedema can do."  Indeed, the information about lymphedema that Plaintiff did include in

her Objection indicates simply that "it is important to keep body fluids moving" and that

lymphedema sufferers should avoid restrictive or binding clothing and accessories, and elevate

affected limbs when possible.  (*Id.* at 6.)  Furthermore, Plaintiff acknowledged that Dr. Dale

advised her to start walking for fifteen minutes two times a day as part of her course of

treatment.  (Tr. 155.)  Plaintiff's own arguments thus not only refute her objection, but bolster

the ALJ's finding that she could engage in light work.  For these reasons, the Court finds that

ALJ Letchworth's assessment—that Plaintiff's RFC permitted her to perform the full range of

light work—was supported by substantial evidence.

## V.   CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report,

**DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.  This Order

terminates the Court's jurisdiction over the above-captioned action, and the case is

**DISMISSED**.  The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this___1st___day of  November, 2013.


_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT